**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| **v.** | : | **CRIMINAL NO. 25-232** |
| **DEMETRIO LAGUNES-XOCUA** | : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by its attorneys, David Metcalf, United States Attorney for the Eastern District of Pennsylvania, and Lindsey T. Mills, Assistant United States Attorney for the District, hereby files this sentencing memorandum. The defendant, Demetrio Lagunes-Xocua, is scheduled to be sentenced on August 17, 2026.

The defendant faces sentencing for his participation in a drug trafficking operation that involved his possession of over ***100 pounds of methamphetamine*** that he transported across the country and intended to distribute in the Eastern District of Pennsylvania, while also in possession of a firearm he was not lawfully permitted to have. On April 30, 2026, Lagunes-Xocua pleaded guilty to possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and unlawful possession of a firearm by an alien, in violation of 18 U.S.C. § 922(g)(5). He faces a mandatory minimum of 10 years of imprisonment and also an advisory Sentencing Guidelines range of 120 months' imprisonment. Based on the defendant's criminal conduct in this case, as well as the Section 3553(a) sentencing factors, the Government respectfully recommends a sentence of 120 months of imprisonment, the mandatory minimum term of imprisonment that the Court is statutorily obligated to impose.

Pursuant to the Court's standing order, dated February 5, 2026, the government simultaneously submits a sealed supplemental memorandum.

## I. BACKGROUND

### A. The Charges and Factual Background

On May 28, 2025, the Government filed a two-count indictment charging the defendant with possession with intent to distribute 500 grams or more of a mixture and substance containing a detectable amount of methamphetamine, a Schedule II controlled substance, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(A), and unlawful possession of a firearm by an alien, in violation of 18 U.S.C. § 922(g)(5). These charges arose from the defendant's willingness to transport an incredibly large amount of drugs across the country in a tractor trailer he was operating. While the defendant was undoubtedly not the leader of an organization or a drug "kingpin," his role in transporting hundreds of thousands of dollars[1] in dangerous drugs across the country was a critical one. The operation could not have been successful without him. What is more, the defendant knew it was wrong, and he knew it was dangerous, which is why he was armed with a loaded firearm in the cabin of the truck he was driving from Colorado to Pennsylvania to deliver the load of over 100 pounds of methamphetamine.

## II. STATUTORY MAXIMUM AND MINIMUM SENTENCES

### A. Count 1 – 21 U.S.C. § 841(a)(1), (b)(1)(A)—Possession with Intent to Distribute 500 grams or more of Methamphetamine

The defendant is subject to a statutory maximum sentence of life imprisonment, a 10-year

[1] DEA Special Agent Robert Bates provided that a conservative estimate of methamphetamine street value is between $10-$20/gram of methamphetamine. Therefore, $10-20 x 454 grams (1 pound) = $4,540 to $9,080 per pound street value; $10-20 x 49,940g (110 pounds) = **$499,400 to $998,800 total street value**.

mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to lifetime supervised release, a $10,000,000 fine, and a $100 special assessment.

**B. Count 2 – 18 U.S.C. 922(g)(5) – Possession of a firearm by alien**

The defendant is subject to a statutory maximum sentence of 15 years' imprisonment, three years of supervised release, a $250,000 fine, and $100 special assessment.

The total statutory maximum and mandatory minimum sentence the defendant faces is life imprisonment, a 10-year mandatory minimum term of imprisonment, a mandatory minimum 5 years of supervised release up to a lifetime of supervised release, a $10,250,000 fine, and $200 special assessment.

## III. SENTENCING GUIDELINES RANGE CALCULATION

The Probation Office has calculated the defendant's exposure under the United States Sentencing Guidelines in its Presentence Investigation Report (PSR). The base offense level starts at 38, because the defendant possessed with the intent to distribute more than 4.5 kilograms of methamphetamine (actual) — 49.72 kilograms in this case. PSR ¶ 19; U.S.S.G. § 2D1.1(a)(5). Probation has designated the defendant as a minimal participant, which lowers the defendant's offense level to 30, and further provides him with a 4-level downward adjustment, pursuant to a relatively new guideline provision set forth in U.S.S.G. § 3B1.2(a). PSR ¶¶ 19, 22. The government did not formally object to this determination, as it ultimately does not affect the mandatory minimum of 120 months, which becomes the operative guideline range. While, in the government's view, the defendant's participation may be more akin to minor rather than minimal, due to the sheer volume of methamphetamine he was responsible for transporting, the mission-critical nature of his role, and the presence of the illegal firearm, again, the government does not object as it agrees 120 months is the appropriate and necessary sentence here.

The defendant receives a 2-level increase for possession of a firearm in connection with the offense, pursuant to USSG § 2D1.1(b)(1). PSR ¶ 20. The defendant receives a 3-level reduction, due to his acceptance of responsibility and timely notification of his intent to plead guilty, bringing his adjusted offense level to 25. PSR ¶¶ 26-27. The defendant has no prior criminal convictions, resulting in zero criminal history points deemed a criminal history category of I. PSR ¶¶ 29-31. With an offense level of 25 and a criminal history category I, the defendant's advisory guideline range is 57 to 71 months' imprisonment, before adjustment to the statutory required 120-month guideline term.[2] PSR ¶ 62.

## IV. CONSIDERATION OF THE 3553(a) FACTORS

The Supreme Court has declared, "[a]s a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Gall v. United States*, 128 S. Ct. 586, 596 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a), in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other

[2] The defendant is not eligible for the safety valve provisions due to the possession of the firearm in connection with the drug trafficking offense. *See* USSG § 5C1.2(a)(2).

correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a). Overall, the statutory directive is that the court, in balancing these factors, "shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph of this subsection." *Id.*

As discussed below, in consideration of the defendant's conduct in this case and his history and characteristics, as well as the advisory Guidelines range, and the statutory mandatory minimum term of imprisonment, the Government respectfully recommends a sentence of 120 months' imprisonment. The defendant has no criminal history, demonstrated early acceptance of responsibility, and participated as essentially a courier in this drug trafficking operation. Balanced with those considerations, the Court should weigh his role, which was still necessary to the successful transportation of over a hundred pounds of methamphetamine into this district, and the danger those drugs pose to the community, in fashioning a sentence. Accordingly, the Government recommends a sentence of 120 months as "sufficient, but not greater than necessary" to meet the objectives of the Section 3553(a) factors and as the appropriate sentence in this case. *See* 18 U.S.C. § 3553(a).

### A. The nature and circumstances of the offense and the history and characteristics of the defendant.

Defendant Lagunes-Xocua engaged in a serious offense involving a tremendous amount of drugs. He transported over 100 pounds – nearly 50 kilograms – of methamphetamine into the Eastern District of Pennsylvania. That weight is over 10 times the maximum drug quantity for actual methamphetamine in the sentencing guidelines table. *See* USSG § 2D1.1(c)(1). While the

defendant's role was not substantial, and he was not in any kind of leadership or managerial position, his role was a necessary one. There is no claimed ignorance here – the defendant knew what he was agreeing to do, and while he was not the leader or organizer, he nonetheless agreed to participate for financial compensation.

Moreover, the Court ought to consider, in evaluating the nature and circumstances of the offense, the incredibly harmful impact that the volume of drugs the defendant admitted to transporting has on the citizens of this community. This Court is all too familiar with the consequences of these deadly drugs in our community, especially with the increase in methamphetamine use in this area. Methamphetamine is a powerful and highly addictive stimulant drug, one that is dangerous in its effects taken alone or in combination with other drugs, such as fentanyl.[3] Distribution of this drug has an immensely negative impact on the community, and this defendant has been found guilty of directly contributing to that harm.

And the defendant compounded the dangerous nature of transporting large volumes of drugs by arming himself with a loaded firearm. The firearm was found in the front truck cabin. The Court is well-aware of the dangerous nature of drugs alone, only made more dangerous by the combination of drugs and firearms.

In addition, the Court ought to consider that the defendant has no criminal history – no arrests or convictions. He is likely to be deported upon completion of his sentence since he is present in the United States illegally and a citizen of Mexico.

All things considered, the Government submits that a sentence of 120 months' imprisonment, which is the mandatory minimum and defendant's guideline recommendation,

---

[3] *See* National Institute on Drug Abuse, Methamphetamine, https://nida.nih.gov/research-topics/methamphetamine (last accessed Aug. 26, 2025)

would appropriately reflect the circumstances and nature of the defendant's offense, while still taking into account his lack of criminal history and early acceptance of responsibility.

### B. The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.

The same considerations discussed above apply to the second Section 3553(a) factor, concerning the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment. The sheer volume of methamphetamine involved in this case is extremely concerning and posed a significant danger to the community. A sentence of 120 months' imprisonment for the defendant's crime—possession with the intent to distribute over 100 pounds of methamphetamine—appropriately reflects the seriousness of that offense, promotes respect for the law, and provides just punishment, as it is a significant sentence that will result in the defendant spending meaningful time in prison.

### C. The need to afford adequate deterrence to criminal conduct and to protect the public from further crimes of the defendant.

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. A sentence of 120 months' imprisonment would adequately account for both. As to specific deterrence, a sentence of this length will directly prevent the defendant from committing future crimes for a considerable period of time, and it will also deter him from recidivating once released. He can choose either to turn his circumstances around—to obtain continuing education and skills, learn a trade, and dedicate himself to gainful employment once released—or to reconnect with the criminal drug-trafficking network he was engaged with before being incarcerated.

As for general deterrence, the Court's imposition of a 120-month sentence in this case would send a strong message that those who traffic in dangerous narcotics, particularly in large

quantities similar to that involved here, and possess dangerous weapons while doing so, will face stiff and serious punishment.

### D. <u>The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.</u>

There is no known need in this case to adjust the sentence in order "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner . . . ." 18 U.S.C. § 3553(a)(2)(D).

### E. <u>The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.</u>

The final Section 3553(a) factors, concerning statements of the Sentencing Commission and the need to avoid unwarranted sentence disparities among similarly situated defendants, also weigh in favor of a 120-month sentence for the defendant, which as noted would represent a term equivalent to the mandatory minimum and therefore applicable sentencing guidelines.

## V. <u>CONCLUSION</u>

For these reasons and any that may be presented at the defendant's sentencing hearing, the government submits that a sentence of 120 months' imprisonment is appropriate in this case.

Respectfully submitted,

DAVID METCALF
United States Attorney

*<u>/s/ Lindsey T. Mills</u>*
LINDSEY T. MILLS
Assistant United States Attorney

**CERTIFICATE OF SERVICE**

I hereby certify that on this date I caused a true and correct copy of the foregoing Government's Sentencing Memorandum to be served by ECF upon counsel for defendant:

Bohdan Zelechiwsky, Esq.

/s/ *Lindsey T. Mills*
LINDSEY T. MILLS
Assistant United States Attorney

Dated: August 7, 2026