**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | : | |
| | : | CRIMINAL ACTION |
| **VS.** | : | NO. 25-232 |
| **DEMETRIO LAGUNES-XOCUA,** | : | |

**DEFENDANT'S SENTENCING MEMORANDUM**

Demetrio Lagunes-Xocua will appear before this Court for sentencing on August 17, 2026, having pleaded guilty to one count of possession with intent to distribute 500 grams or more of methamphetamine in violation of Title 21, United States Code Section 841 (a), (b)(1)(A); and one count of possession of a firearm by an alien, in violation of Title 21, United States Code Section 922 (g)(5)(A). This memorandum in aid of sentencing is respectfully submitted through his counsel.

## I. Factual Background

The government and defense are in alignment on the facts that give rise to this matter. Accordingly, they will not be repeated herein.

## II. Sentencing Guidelines

The probation officer calculated the guidelines as follows: a base offense level of 38 for the quantity involved. Since a firearm was possessed, the offense level was increased by 2 levels pursuant to USSG §3B1.2(a). After a four level reduction due to defendant being a low-level courier within a larger drug conspiracy, the level was decreased pursuant to USSG §3B1.2(a). Defendant received additional decreases due to his acceptance of responsibility pursuant to USSG §3E1.1(a) by two levels and an additional reduction of one level because defendant assisted in the investigation and prosecution of his own misconduct by timely notifying

authorities of his intention to plead guilty pursuant to USSG §3E1.1(b). Defendant's total offense level was properly computed at 25.

Defendant has no prior criminal record.

## III. Statutory Maximum Sentence

Count 1 – possession with intent to distribute 500 grams or more of methamphetamine, maximum lifetime imprisonment, a mandatory 10 years imprisonment, a $10,000,000 fine, at least 5 years of supervised release up to a lifetime of supervised release, and a special assessment.

Count 2 – possession of a firearm by an alien. 15 years of imprisonment, a term of not more than 3 years of supervised release.

## IV. The Applicable Sentencing Standard

Following the Supreme Court's decision in *United States v. Booker,* 125 S.Ct. 738 (2005), a sentencing court must impose a sentence after giving meaningful consideration to the factors contained in 18 U.S.C. § 3553(a), *United States v. Cooper*, 437 F.3rd 324, 329 (3d Cir. 2006). The Sentencing Guidelines that were once mandatory are now advisory and the properly calculated sentencing guideline range is now but one factor in the Court's sentencing determination. The Third Circuit has articulated the steps that the sentencing court must go through at sentencing.

> A district court must begin the process by first calculating the Applicable Guidelines range. After that initial calculation, the Court must then rule on any motions for departure and, if a Motion is granted, stated how the departure affects the Guidelines Calculation. Finally, after allowing the parties an opportunity for Argument, the Court must consider all of the § 3553(a) factors And determine the appropriate sentence to impose, which may Vary from the sentencing range called for by the guidelines.

*United States v. Tomko*, 562 F.3d 558, 567 (3rd Cir. 2000)

Section 3353(a) mandates that a district court must "impose a sentence sufficient but not greater than necessary" to comply with the purpose of sentencing set forth in 18 U.S.C. §3553(a)(2). The third Circuit has interpreted the statute to requiring the imposition of a sentence which is "minimally sufficient" to achieve the states purposes of sentencing. *United States v. Serafini*, 436 F.3d 638, 776 (3d Cir. 2000) See also *United States v. Tucker,* 437 F.3d 556, 561 (4th Cir. 2007); *United States v. Forman*, 436 F.3d 638, 644n.1 (6th Cir. 2006). The purpose of sentencing includes the need "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense"; "to afford adequate deterrence to the defendant with the needed educational or vocational training, medical care, or other correctional treatment in the most effective manner." 18 U.S.C. §3553(a)(2)(A),(B),(C) and (D).

The courts must also consider "the nature and circumstances of the offense and the history and characteristics of the defendant"; the kinds of sentences available"; The Sentencing Guidelines; and "the need to provide restitution to any victims of the offense." 18 U.S.C. §3553(a)(1), (3), (4) and (7).

## V. <u>The Requirements of Section 3553(a)</u>

### A. <u>The Nature and Circumstances of the Offense</u>

Under §3443(a0(1), the Court must analyze "the nature and circumstances" of the offense. To be clear, the defendant engaged in serious criminal conduct, as evidence by his guilty plea. The defendant immediately accepted responsibility, made no excuses for his conduct, and advised the government of his intention to enter a plea in this matter. The defendant also cooperated fully in supplying all the information known to him about the criminal enterprise where he was a low-level courier. Unfortunately, due to the delay between the date of his initial

arrest which occurred on April 20, 2024, to the date when he was transferred into federal custody on May 29, 2025, over one year had passed and all the information that the defendant provided in hopes of being eligible for 5k1.1 downward departure to the sentencing guidelines was stale and not useful. The criminal drug trafficking organization had long since moved on to new locations and operations.

**B. Just Punishment**

Demetrio Lagunes-Xocua is 32 years old. At the time of sentencing, he will have served approximately 28 months for this offense. He has also served part of his sentence in the Chester County Jail, a far more restrictive environment than an FDC. Imposing a sentence of the mandatory minimum 10 years' and the possibility of additional period of imprisonment due to his plea to Count 2; possession of a firearm by an alien, constitutes an extremely harsh sentence. Further incarceration beyond that is "greater than necessary" to comply with the purpose of sentencing. As reflected in the PSR, the guideline range of 120 months is driven by the mandatory minimum in this case, which is nearly double the low-end of the otherwise applicable range which is 51 to 71 months. This defendant has no criminal history, was a minor participant in the organization, had addiction issues, and will be deported. The age of the Defendant when he will be released from incarceration also dictates against his risk of recidivism. The Sentencing Commission has found that recidivism rates decline relatively consistently as age increases. See U.S. SENTENCING COMMISSION, MEASURING RECIDIVISM: THE CRIMINAL HISTORY COMPUTATION OF THE FEDERAL SENTENCING GUIDELINES 12, ex. 9 (2004). Should the Court have any ability to sentence the defendant within the original guideline range of 51-71 months we would request the court to do so.

### C. The History and Characteristics of the Defendant

Section 3553(a)(1) also requires that a sentencing court examine the history and characteristics of each defendant that appears before it in order to impose a sentence that balances the offense with other relevant factors. The Supreme Court has recognized that "it has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in human failing that sometimes mitigate…the crime and punishment to ensue." *United States v. Koon*, 518 U.S. 81, 113 (1966). We ask for the same consideration from this Court.

Lagunes-Xocua appears for sentencing with less-than-ideal upbringing. For the first 28 years of his life the defendant resided in Veracruz, Mexico. His father abandoned the family when the defendant was only 3 years old, where he moved to Alabama and had minimal contact with the family until his death in 2016. The defendant's mother when he was 6 years of age moved to Mississippi to secure a better income, leaving the defendant and his siblings in the care of their uncle. The uncle was an alcoholic, was physically abusive, he squandered on himself any monies that defendant's mother provided him for the care of the children. The uncle forced the children to work in the fields and threatened them not to disclose his mistreatment. After his mother realized what was going on she returned to Mexico where the family's situation improved a little. Defendant's mother began a relationship with Cirilo Martinez, who assumed a parental role in the defendant's life and taught him how to drive. The relationship ended in 2018 but Mr. Martinez still keeps in contact with the family.\

The defendant at age 18 left home and began a relationship with Nicolasa Beltran-Ramirez. He built a house in Veracruz and the couple had two children. The couple separated,

but the defendant keeps in contact with them. Looking for a better life, defendant illegally moved to the United States residing in Aurora, Colorado. Defendant is in a committed relationship with Jahaira Hernandez-Tober who resides in Aurora. She has 2 children from a prior relationship who have a good relationship with the defendant. Ms. Hernandez-Tober remains in contact with the defendant and was surprised about his arrest. Lagunes-Xocua is extremely remorseful for his conduct and he misses his children and those of Hernandez-Tober with whom he speaks frequently. Being away from his children and family for the past 27 months he realizes how impactful his criminal conduct and his lengthy incarceration has been on his family. He realizes that upon completion of his sentence he will be deported to Mexico. He plans upon his release after being deported to Mexico, to return to his family a rehabilitated man who will lead a law-abiding life. As he stated during the presentence interview growing up without a father motivated him to provide for his children. The defendant's priority has always been his children.

**D. <u>Need for Adequate Deterrance</u>**

The empirical evidence is unanimous that there is no relationship between sentence length and general or specific deterrence, regardless the type of crime. See Andrew von Hirsch et el. Criminal Deterrence and Sentence Severity: An analysis of recent Research (1999) (concluding that "correlations between sentence severity and crime rates…were not sufficient to achieve statistical significance," and that "studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects") Michael Tonry, *Purposes and Functions of Sentencing, 34 Crime and Justice;* A review of Research 28-29(2006) ([I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects…Three National Academy of Science panels, all appointed by

Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd et al., *Specific Deterrence in a Sample of Offenders Convicted of White Collar Crimes*, 33 Criminology 587(1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010)) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that [t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame"). The Sentencing Commission has found that "[t]here is no correlations between recidivism and guidelines offense level… "The guidelines' offense level is not intended or designed to predict recidivism." *U.S. Sent'g Comm'n Measuring Recidivism:* The Criminal History Computation of Federal Sentencing Guidelines, at 15 (2004) ["U.S. Sent'g Comm'n, Measuring Recidivism"] See also Part IV.A.3, *infra.* And accordingly "the best available evidence…prisons do not reduce recidivism more than noncustodial sanctions." Francis T. Cullen et al., *Prisons Do Not Reduce Recidivism: The High Cost of Ignoring Science*, 91 Prison J. 48S, 50S-51S (2011).

Should the Court believe that sentences do equate to deterrence, it is submitted that if possible, sentence to have the ability to the guideline range of 51-71 month long sentence followed by deportation to Mexico, is sufficient to accomplish that deterrence. To be sure, Lagunes-Xocua understands the enormity of his offenses and that sentence meets the needs for his further deterrence.

The guideline sentence is also sufficient to serve notice to others who commit, or are inclined to commit, similar offenses that the Justice Department will forcefully deal and result, as in this case, in a significant period of incarceration. To the extent that punishment deters others from committing crimes, a sentence in excess of the guideline does nothing, it is submitted, to add further deterrence to others. The public filing of the charges against him, his plea of guilty, conviction, and sentencing have served as evidence to the public of what may happen to those who violate the Nation's drug laws.

**E. <u>Promote Respect for the Law</u>**

No one can contest the fact that a guideline sentence, followed by deportation, promotes respect for the law. As the Supreme Court observed in *Gall*: "a sentence of imprisonment may work to promote not respect, but derision, of the law if the law viewed as merely a means to dispense harsh punishment without taking into account the real conduct and circumstances involved in sentencing. "*Gall*, 522 U.S. at 54 (quoting with approval the reasoning of the district court) see also *United States vs. Deegan*, 605 F.3rd 625, 655 (8th Cir. 2010) (observing that harsh federal punishment when compared to lenient state sentencing for the same criminal activity "promotes disrespect for the law and the judicial system") *United States v. Ontiveros*, 07-CR-333, 2008 WL 2937539, AT 3* (E.D. July 24, 2008) ("[A] sentence that is disproportionally long in relation to the offense is unjust and likewise fails to promote respect [for the law]."); CF. *United States v. Stern,* 590 F.Supp. 2d 945, 957 (N.D. Ohio 2008) (Respect for the law is promoted by punishments that are fair, however, not those that simply punish for punishment's sake."). Thus, careful application of the §3553(a) factors is imperative and pivotal to providing just punishment promoting respect for the law.

**<u>Sentencing Recommendation</u>**

Under the circumstances of this case, we understand the mandatory minimum sentence is 120 months should the court have the authority in the guideline range to impose a sentence and the sentence of Count 2 to run concurrent to his sentence in Count 1. Such a sentence is appropriate given the totality of the circumstances of this matter. Such a sentence would meet the states purposes of federal sentencing. Demetrio Lagunes-Xocua has fully acknowledged his transgressions. He will serve a lengthy sentence away from his family, and he will miss being a part of his children's upbringing, and more importantly will be unable to provide for them. He wishes to serve his time, but, also be provided with the opportunity to return to his family, to rebuild his life, renew his relationship with his children and be a provider for his family.

For these reasons the defense respectfully requests a variance below the mandatory minimum sentence required by statute. The future of this defendant is humbly presented to this Court for proper consideration.

Respectfully Submitted:

Dated: 8/6/26

Bohdan J. Zelechiwsky
Attorney I.D. No.: 26892
527 Hamilton Street
Allentown, PA 18101
610-841-8690
*Counsel for Defendant*